UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN WOLSH, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No. 17-cv-11230-ADB |
| DITECH FINANCIAL LLC f/k/a GREEN | * |
| TREE SERVICING, LLC, | * |
| | * |
| Defendant. | * |
| | * |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Stephen Wolsh asserts claims for negligent misrepresentation and breach of the

covenant of good faith and fair dealing against his current mortgage loan servicer, Defendant

Ditech Financial LLC f/k/a/ Green Tree Servicing. [ECF No. 16] ("Amended Complaint").

Currently pending before the Court is Defendant's motion to dismiss for failure to state a claim.

[ECF No. 20]. For the following reasons, the motion is GRANTED and the Amended Complaint

is DISMISSED without prejudice. Plaintiff may file a second amended complaint within 21 days

if he can cure the deficiencies discussed herein.

I.      BACKGROUND

In evaluating Defendant's motion to dismiss, the Court accepts the well-pleaded

allegations as true. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014). Plaintiff has

attached several documents to the Complaint, which the Court may consider as part of the

pleadings. See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008); Trans-Spec Truck Serv., Inc.

v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). The Court may also look to documents that

are central to Plaintiff's claim or documents that are sufficiently referred to in the Amended

Complaint. See Watterson v. Page, 987 F.2d 1, 3−4 (1st Cir. 1993).

In April 2008, Plaintiff obtained a loan of $417,000 from GMAC Mortgage, LLC

("GMAC"), with Mortgage Electronic Registration Systems, Inc. ("MERS") serving as GMAC's

nominee. The loan was secured by a mortgage on Plaintiff's property in West Dennis,

Massachusetts.[1] Am. Compl. ¶¶ 4, 10–11; [ECF No. 20-1 at 2–3]. Plaintiff remained current on

his mortgage payments until 2012 when, due to the impact of the nationwide financial crisis and

Plaintiff's health issues, Plaintiff contacted GMAC regarding his need for a loan modification.[2]

Am. Compl. ¶¶ 13–16. A GMAC representative told Plaintiff that his loan would need to be in

default for three months to be eligible for a loan modification; Plaintiff then purposefully

defaulted on his mortgage payments. Id. ¶¶ 16–18. After falling at least three months behind,

Plaintiff contacted GMAC again but was informed that GMAC was unable to accept his

payments due to his default, and he never received a loan modification from GMAC. Id. ¶¶

19–23.

In June 2016, after Defendant succeeded GMAC as Plaintiff's mortgage loan servicer,

Defendant offered Plaintiff a trial period plan ("TPP") as an initial step toward obtaining a

permanent loan modification. Id. ¶¶ 23–25. The TPP included an estimation of the terms of a

permanent loan modification offer, including a new loan balance of $541,774.63 (unpaid

principal balance of $401,103.16 plus principal forbearance of $140,671.47, and monthly

principal and interest payments of $1,214.64). [ECF No. 20-1 at 38]. To qualify for a permanent

---

[1] The mortgage was later assigned on March 16, 2009 from MERS to GMAC and on February 20, 2014 from GMAC to U.S. Bank, N.A., as trustee on behalf of GMACM Mortgage Loan Trust 2010-12, Mortgage Pass-Through Certificate Series 2010-12. [ECF No. 20-1 at 28–30].
[2] In 2012, GMAC was serving as both the lender and servicer of the mortgage. Am. Compl. ¶¶ 13–16, 22, 60.

loan modification, and in accordance with the TPP, Plaintiff made three trial payments of $1,839.45 in August, September, and October 2016. Id. ¶ 26; [ECF No. 20-1 at 33]. Plaintiff allegedly made these payments in reliance on Defendant's statements to him that if he did not agree to a permanent loan modification for any reason, the trial payments would be returned to him. Id. ¶ 27. Defendant never returned the TPP payments. Id. ¶ 28.

In October 2017, Defendant received an offer for a permanent loan modification but found the terms to be unacceptable; the principal amount due under the permanent loan modification was $555,000 and exceeded the appraisal value of the property of $359,000. Id. ¶¶ 29–30. Plaintiff declined to accept the offer after Defendant refused to reduce the principal amount owed. Id. ¶¶ 31–35. On November 10, 2016, before declining the modification offer, Plaintiff confirmed with an employee of Defendant that his three TPP payments would be returned and that he could immediately apply for a deed in lieu of foreclosure. Id. ¶ 36. To do so, Defendant informed Plaintiff that he had to reapply for a loan modification and indicate in his application that he was requesting a deed in lieu of foreclosure. Id. ¶ 38. Plaintiff applied for a deed in lieu of foreclosure and supplied the necessary documentation but his application was denied due to property title issues relating to a "senior mortgage with an improper discharge." Id. ¶¶ 39–44. Defendant at this point had resumed foreclosure proceedings and attempted to foreclose by public auction on April 25, 2017. Id. ¶ 46. The police were called, however, and the auction was cancelled. Id.

## II.    LEGAL STANDARD

To evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v.

Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. P.R., 655 F.3d 61, 72 (1st Cir.

2011)). The complaint must set forth "a short and plain statement of the claim showing that the

pleader is entitled to relief," and should "contain 'enough facts to state a claim to relief that is

plausible on its face.'" Maddox, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2) and Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "To cross the plausibility threshold a claim does

not need to be probable, but it must give rise to more than a mere possibility of liability."

Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting

Iqbal, 556 U.S. at 679) (internal quotation marks omitted). "[T]he complaint should be read as a

whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v.

Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)) (internal quotation marks omitted). "The

plausibility standard invites a two-step pavane." Maddox, 732 F.3d at 80. First, the Court "must

separate the complaint's factual allegations (which must be accepted as true) from its conclusory

legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676

F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining

factual content allows a 'reasonable inference that the defendant is liable for the misconduct

alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

III.    **DISCUSSION**

    A.    **Negligent Misrepresentation**

    To prevail on a claim for negligent misrepresentation, Plaintiff must establish that:

    the defendant (1) in the course of his business, (2) supplied false information for
    the guidance of others (3) in their business transactions, (4) causing and resulting
    in pecuniary loss to those others (5) by their justifiable reliance on the information,

and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

Brown v. Bank of Am., Nat'l, Ass'n, CIV.A. No. 13-13256-PBS, 2015 WL 13685917, at *12 (D. Mass. Sept. 3, 2015) (quoting Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009)).

Plaintiff relies on several statements that do not plausibly satisfy one or more of the elements of negligent misrepresentation. First, Plaintiff asserts that GMAC allegedly misrepresented that Plaintiff needed to fall three months behind on his mortgage payments to qualify for a loan modification, but Plaintiff provides no basis for the Court to hold this Defendant liable for the statements made by GMAC as the lender and prior servicer.

Second, Plaintiff contends that Defendant's use of forms or templates to prepare the TPP, the permanent loan modification offer, and the other documents resulted in confusing contractual language, but does not identify any specific provision or describe the content that created confusion. Moreover, the confusion only caused Plaintiff to contact Defendant for further clarification and to rely upon the oral representations of Defendant's agents. Plaintiff has not adequately alleged that any of the confusing documents contained false information, that he detrimentally relied upon any confusing written terms as opposed to oral statements, or that he suffered a pecuniary loss as a result.

Third, Plaintiff complains that Defendant instructed that he must reapply for a loan modification to request a deed in lieu of foreclosure, but he does not allege that this statement was false or that his reliance on it and use of this procedure caused any damages. Although Defendant informed Plaintiff that he could immediately apply for a deed in lieu of foreclosure, there is no suggestion that Defendant represented that he was guaranteed to receive a deed in lieu of foreclosure or entitled to any specific application process. Similarly, Plaintiff treats the permanent loan modification offer and refusal to reduce the principal amount as a

misrepresentation but does not identify any information contained in the offer or refusal that was

purportedly false. He does not allege that the TPP payments or the permanent modification terms

were miscalculated under the Home Affordable Modification Program ("HAMP") guidelines,

but rather that HAMP "would allow" for the principal reduction that Plaintiff requested. Cf.

Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 233 n.4 (1st Cir. 2013) ("One of our sister

circuits has suggested that a contract claim may lie if the increased payment [between the TPP

and the permanent modification offer] resulted from a misapplication of HAMP guidelines."

(citing Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 565 (7th Cir. 2012))).

The remaining alleged misrepresentation is Defendant's statement that the TPP payments

would be returned to Plaintiff if he did not accept a permanent modification. Defendant

acknowledges that Plaintiff plausibly alleged a statement of false information but argues that

Plaintiff's reliance was not justifiable in light of the written terms of the TPP, which do not

suggest that the TPP payments were refundable. Plaintiff, however, has plausibly alleged that he

entered into the written terms of the TPP based on the alleged misrepresentation. The Court

therefore will not foreclose the possibility at this stage that he may have justifiably relied on the

oral representations of Defendant's agent notwithstanding any conflict with the TPP's written

terms. See Broderick v. PNC Mortg. Corp., No. CIV.A. 11-10047-JLT, 2013 WL 6909531, at *2

(D. Mass. Dec. 30, 2013) ("Courts have expressed a strong preference that in the context of

negligent misrepresentation claims, the element of reliance should be determined by a jury. . . .

Here, a reasonable jury could find that [defendant's] failure to provide [plaintiff with] complete

information about the mortgage terms when she was applying online or at the closing day, and

which significantly differed from the terms that had been orally discussed, constituted negligent

misrepresentation.").

Defendant is correct, however, that Plaintiff did not suffer any pecuniary harm from

paying the nonrefundable TPP payments because he "only made payments that [he] otherwise

[was] contractually obligated to make" on the mortgage. Hannigan v. Bank of Am., N.A., 48 F.

Supp. 3d 135, 141 (D. Mass. 2014); see Brown v. Bank of Am., Nat'l, Ass'n, 67 F. Supp. 3d

508, 519 (D. Mass. 2014) ("Loss of mortgage payments alone does not satisfy the harm

requirement because the money was already due on the mortgage agreement."); Kiluk v. Select

Portfolio Servicing, Inc., No. CIV.A. 11-10731-FDS, 2011 WL 8844639, at *5 (D. Mass. Dec.

19, 2011) ("The only money . . . that plaintiffs lost in reliance on defendant's alleged

misrepresentation alleged in the complaint are the three reduced mortgage payments plaintiffs

made under the TPP. However, the loss of that money did not harm plaintiffs. Plaintiffs had an

existing contractual obligation to make mortgage payments to defendant. Relying on defendants'

representation, plaintiffs changed their financial position, but the change was to their

pecuniary benefit, in the form of a lower monthly mortgage payment . . . . Therefore, the

modified mortgage payments, standing alone, do not constitute a pecuniary harm.").

A negligent misrepresentation claim may nonetheless survive a motion to dismiss where

other forms of damages are alleged. See Hannigan, 48 F. Supp. 3d at 141 (denying motion to

dismiss where "plaintiffs allege a variety of pecuniary damages," even though those damages

were indirect, "including money spent in ways in which plaintiffs would not have otherwise

spent it had they known they would not obtain a loan modification"); Kiluk, 2011 WL 8844639,

at *5 ("Hypothetically, at least, the pecuniary loss requirement might be met if the plaintiff,

relying on defendant's promises in the TPP, suffered other harms—such as incurring increased

fees, losing opportunities to pursue refinancing, or forgoing other opportunities to avoid

foreclosure."); Brown, 67 F. Supp. 3d at 519 (construing a *pro se* pleading broadly to allow

negligent misrepresentation claim to proceed where "the amended complaint . . . mentioned injuries resulting from the HAMP loan modification process, including payment of improper fees and charges, unreasonably high mortgage payments, damage to credit, loss of time, and accumulation of interest").

Here, Plaintiff alleges that interest and late fees accrued as a "direct result" of GMAC's alleged misrepresentations and due to the property's title issues, but he does not allege that Defendant's misrepresentation about the TPP payments caused these other damages. Am. Compl. ¶ 62. He also vaguely asserts that he "has relied on these misrepresentations by foregoing other potential foreclosure alternatives," but does not provide any information about how the TPP payment misrepresentation caused him to forego such alternatives, or what those alternatives were. Id. ¶ 70.

Plausible negligent misrepresentation claims based on a TPP generally involve a misrepresentation that caused a mortgagor to fail to qualify for a loan modification or to believe that he or she would receive a loan modification. See, e.g., Brown, 67 F. Supp. 3d at 519 (denying motion to dismiss negligent misrepresentation claim based on defendant's "promise that [plaintiff] would receive a loan modification and a hiatus in the foreclosure process if he submitted his financial information and made three TPP payments"); Dill v. Am. Home Mortg. Servicing, 935 F. Supp. 2d 299, 304 (D. Mass. 2013) ("The allegations in [p]laintiffs' complaint are sufficient to state a claim that [defendant] negligently misrepresented the criteria for modification."); Hannigan, 48 F. Supp. 3d at 140 (plausible claim where defendant allegedly misrepresented that plaintiffs did not need to comply with condition precedent to be eligible for loan modification); Kirtz v. Wells Fargo Bank N.A., No. CIV.A. 12-10690-DJC, 2012 WL 5989705, at *6 (D. Mass. Nov. 29, 2012) (plausible claim where defendant misrepresented that

plaintiff did not need to file additional documents to complete loan modification file, causing plaintiff not to submit available documents or pursue other options).

Here, however, Plaintiff does not allege that he was misled about the criteria for qualifying for a loan modification. He also received a permanent loan modification offer but rejected it based on its terms, not the unreturned TPP payments. Therefore, Plaintiff has not adequately shown that any misrepresentation about refunding the TPP payments caused him to forego other alternative forms of relief, given that he apparently entered into the TPP for the purpose of receiving a permanent loan modification but rejected the offer on separate grounds.

Although leave to amend is likely to be futile, the Court will allow Plaintiff an opportunity to file a second amended complaint within 21 days of the date of this order, if Plaintiff can plausibly allege that he suffered damages, other than the loss of the TPP payments, that were caused by an actionable misrepresentation by the Defendant.

**B.      Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff also asserts that Defendant violated the implied covenant of good faith and fair dealing by (1) failing to fix an issue with the title of the property; (2) delaying the review of his application for a deed in lieu of foreclosure; and (3) ignoring his attempts to negotiate a loan modification. "Under Massachusetts law, '[e]very contract implies good faith and fair dealing between the parties to it,'" which requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." Young, 717 F.3d at 237−38 (quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 703–04 (Mass. 2010)). "The concept of good faith 'is shaped by the nature of the contractual relationship from which the implied covenant derives,' and the 'scope of the covenant is only as broad as the contract that governs the particular relationship.'" Id. at 238 (quoting Ayash v. Dana–Farber

Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005)). "As a consequence, the implied covenant cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" Id. (internal citation omitted).

"There is no requirement that bad faith be shown; instead, the plaintiff has the burden of proving a lack of good faith." T.W. Nickerson, Inc., 924 N.E.2d at 704. "Lack of good faith 'carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.'" Young, 717 F.3d at 238 (quoting Hartford Accident & Indem. Co. v. Millis Roofing & Sheet Metal, Inc., 418 N.E.2d 645, 647 (Mass. App. Ct. 1981)). "Evidence that a party behaved in a manner 'unreasonable under all the circumstances' may indicate a lack of good faith, Nile v. Nile, 734 N.E.2d 1153, 1160 (Mass. App. Ct. 2000), but the core question remains whether the alleged conduct was motivated by a desire to gain an unfair advantage, or otherwise had the effect of injuring the other party's rights to the fruits of the contract." Id.

Here, Plaintiff fails to identify any contract between the parties as the basis for his claim. The Amended Complaint treats the mortgage as the operative agreement, but because Defendant was not the original mortgage servicer, mortgagee, or lender under that agreement, Defendant owed "no implied duties to Plaintiff arising out of the mortgage contract." Dill, 935 F. Supp. 2d at 303; see McCusker v. Ocwen Loan Servs., LLC, CIV.A. No. 14-13663-MGM, 2015 WL 4529986, at *6 (D. Mass. July 27, 2015) ("Loan servicers owe no duty to plaintiffs arising out of mortgage contracts because loan servicers are technically not parties to the mortgage . . . . Loan servicers hold 'no beneficial ownership interest in the mortgage, or in the debt secured thereby; instead, [their] role [is] strictly as servicing agent' for the mortgagee and the note holder." (quoting Haskins v. Deutsche Bank Nat'l Trust Co., 19 N.E.3d 455, 459 n.10 (Mass.

App. Ct. 2014))); Mudge v. Bank of America, N.A., Civ. No. 13-cv-421-JD, 2015 WL 1387476, at *5 (D.N.H. Mar. 25, 2015) ("A mortgage servicer that is not a party to the mortgage contract owes no implied covenant to the mortgagor."). Even assuming that the mortgage could serve as the foundation for an implied covenant claim against Defendant, Plaintiff has not identified any provision of the mortgage that created a duty upon Defendant as a successor loan servicer to notify Plaintiff of title issues or repair them, to modify his mortgage after a default, or to grant a deed in lieu of foreclosure. See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 493 (1st Cir. 2013) (no implied covenant claim where "nothing in the mortgage imposes a duty on [servicer] to consider a loan modification prior to foreclosure in the event of a default"); Peterson v. GMAC Mortg., LLC, CIV.A. No. 11-11115-RWZ, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011) ("Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults.").

Plaintiff attempts to add allegations through his opposition brief to the effect that the TPP, loan modification offer, and deed in lieu application are adequate predicates for the implied covenant claim. The rejection of a loan modification offer and the denial of a deed in lieu application, however, do not trigger the duty of good faith and fair dealing, because neither resulted in the formation of a contract. See Bowser v. MTGLQ Inv'rs, LP, Civ. No. 15-cv-154-LM, 2015 WL 4771337, at *6 (D.N.H. Aug. 11, 2015) ("[W]ithout a contract, the [plaintiffs] cannot sustain a claim for breach of the covenant of good faith and fair dealing."); Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 183–84 (D. Mass. 2011) (implied covenant only "governs conduct of parties after they have entered into a contract," and "without a contract, there is no covenant to be breached." (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005))); Kirtz, 2012 WL 5989705, at *4

(same). The only plausible contract from which the implied covenant derives is the TPP.

Plaintiff, however, has not alleged that Defendant's conduct with regard to the TPP lacked good

faith or that it denied him the fruits of the agreement considering that Defendant ultimately

offered him a permanent loan modification. Nonetheless, Plaintiff may replead the implied

covenant claim based on the TPP, although he is urged to consider whether there is a cognizable

claim before filing a second amended complaint.

## IV.     CONCLUSION

Accordingly, Defendant's motion to dismiss [ECF No. 20] is <u>GRANTED</u> and Plaintiff's

Amended Complaint is <u>DISMISSED</u> without prejudice. If Plaintiff can cure the deficiencies of

the Amended Complaint as discussed herein, he may file a second amended complaint within 21

days.

**SO ORDERED.**

June 5, 2018                                                    /s/ Allison D. Burroughs
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE